**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

13-4353
_____

WALTER W. YOUNG, JR.,
Appellant

v.

TOWNSHIP OF IRVINGTON; IRVINGTON POLICE DEPARTMENT;
HAROLD C. BORK, JR.; ANDREW BORYSCHUK; MILES BROWN;
CHARGES P. BURGHARDT; MICHAEL L. CHASE;
RALPH COLLURA; MICHAEL V. DAMIANO;
NICHOLAS J. GARGAS; FRANCISZEK P. PIWOWARECZYK;
MAURICE GATTISON; AMANDA KOONTZ; THOMAS P. MASSIMINO;
STEPHEN F. MCNALLY; JOHN J. MOLISSO; SHARON NOEL; JAMIE OLIVEIRA;
JOSEPH J. SANTIAGO; MELVIN SHAMBERGER;
LADIMIR TAVARES; CRAWFORD WHITING; IRVINGTON
LEGAL DEPARTMENT; MARVIN BRAKER; GUSTAVO G. GARCIA;
WILLIE PARKER; LAW OFFICE OF IACULLO MARTINO;
ANTHONY J. IACULLO; KATHLEEN C. FEENEY; PAULA DOW;
CLARA RODRIGUEZ; ESSEX COUNTY PROSECUTOR;
COUNTY; JOHN DOES 1-5, (SAID NAMES BEING FICTITIOUS
INDIVIDUALS, CORPORATIONS, AND/OR ENTITIES WHO PARTICIPATED
IN AND/OR FACILITATED IN THE WRONGFUL TERMINATION,
RETALIATION, AND DISCRIMINATION ALL
JOINTLY, SEVERALLY, AND INDIVIDUALLY)
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-11-cv-06855)
District Judge: Honorable Dennis M. Cavanaugh and Honorable Esther Salas
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 9, 2015

BEFORE: SHWARTZ, KRAUSE AND COWEN, <u>Circuit Judges</u>

(Filed: October 19, 2015)

_____

OPINION[*]

_____

COWEN, <u>Circuit Judge</u>.

Plaintiff Walter Young, Jr., appeals from the orders of the United States District Court for the District of New Jersey insofar as they dismissed his claims under the New Jersey Conscientious Employee Protection Act ("CEPA"), the New Jersey Law Against Discrimination ("LAD"), and 42 U.S.C. § 1983 and the First Amendment to the United States Constitution against Defendants Township of Irvington, Irvington Police Department, Chief of Police Michael Chase, Police Director Joseph Santiago, and Police Lieutenant Jamie Oliveira ("Appellees"). We will affirm.

I.

Young was a lieutenant in the Irvington Police Department when his employment was terminated on October 19, 2010. According to Young, "Plaintiff's termination was the culmination of a three-year campaign of unfair treatment and retaliation which began after Plaintiff submitted a written complaint in the winter of 2007 to Internal Affairs regarding Defendant Michael Chase, who was the Chief of Police and Plaintiff's supervisor." (Appellant's Brief at 4.)

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

Young took issue with Chase's alleged improper sexual relationships with subordinates. According to his complaint, he submitted "a written complaint to defendant, Director [Michael] Damiano, Internal Affairs and his attorney that he believed that one of the reasons that defendant, Michael Chase was subjecting him to disciplinary action for false allegations by Officer Whiting, was because defendant, Chief Michael Chase maintained a romantic relationship with Officer Crawford Whiting's sister." (A115.) Young asserts that Whiting's sister was an employee of the Irvington Police Department. Because of this past relationship, Chase "was showing unethical favor" to Whiting to the detriment of Young. (Id.) Furthermore, Young "wrote about another female officer (then Officer Monique Smith) a fairly new officer who went away with defendant, Michael Chase on an Island vacation and upon immediately returning, was promptly promoted to a police detective." (A119-A120).

On March 14, 2010, Sergeant Steward Townsend informed Young, who was the desk supervisor on duty, that he had observed Officer Claude Maxwell sleeping on two occasions while guarding downed electrical lines. Maxwell told Townsend that he had taken a sleep aid shortly before reporting for duty. Young subsequently questioned Maxwell, placed him on sick leave, instructed Townsend to initiate a disciplinary investigation, drafted a memorandum for Oliveira explaining that an investigation had been commenced, and notified Internal Affairs that he had relieved Maxwell "due to him saying that he was tired and that he attributed that fatigue to an over the counter medication." (A91.) "[P]laintiff did not believe Officer Maxwell should be subjected to

3

a reasonable suspicion drug test because there was no evidence that Officer Maxwell was using or abusing any drugs" (e.g., he did not appear lethargic, agitated, or unsteady, and Townsend likewise indicated that he saw nothing unusual about Maxwell's behavior). (A93.) On April 14, 2010, Young "was brought up on 8 departmental disciplinary charges" regarding this incident. (A91.) Santiago presided over a departmental hearing, which ultimately resulted in Young's termination.

Young filed a pro se complaint in the Superior Court of New Jersey, Law Division, Essex County Vicinage. The case was then removed to the District Court. Young's pleading is 300 pages in length, and it includes 614 paragraphs and sixty "counts." Young alleged, inter alia, violations of 42 U.S.C. § 1983 and the First, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, CEPA, New Jersey public employee laws, the New Jersey Constitution, and the Consolidated Omnibus Budget Reconciliation Act (or "COBRA") as well as claims for civil conspiracy, fraud, and both intentional and reckless infliction of emotional distress. There were thirty-three named defendants, including Appellees. On August 31, 2012, the District Court granted the motions to dismiss filed by, inter alia, the Irvington Police Department, Chase, and Oliveira. The District Court subsequently entered orders on June 10, 2013, October 22, 2013, and July 7, 2014, which, inter alia, expressly added Santiago and the Township of Irvington to the August 31, 2012 order. It is undisputed that the District Court has disposed of all of Young's claims against all of the defendants. Young is now represented by counsel.

II.

CEPA prohibits an employer from taking any retaliatory action against an employee because the employee "[o]bjects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes . . . is in violation of a law, or a rule or regulation promulgated pursuant to law."[1]  N.J. Stat. Ann. § 34:19-3(c).  To state a CEPA claim, a plaintiff must make a prima facie showing that:

> (1) he or she reasonably believed that his or her employer's conduct was violating a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

Caver v. City of Trenton, 420 F.3d 243, 254 (3d Cir. 2005) (quoting Dzwonar v. McDevitt, 828 A.2d 893, 900 (N.J. 2003); Kolb v. Burns, 727 A.2d 525, 530 (N.J. App. Div. 1999)).  According to Young, the facts alleged in his complaint set forth a viable CEPA claim because he reasonably believed that he lacked the requisite reasonable

---

[1] The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  We possess appellate jurisdiction under 28 U.S.C. § 1291.  We exercise de novo review over a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  See, e.g., Phillips v. Cty. of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This Court must accept all factual allegations in the complaint as true, construe the pleading in the light most favorable to the plaintiff, and determine whether the plaintiff may be entitled to relief under any reasonable reading of the complaint.  See, e.g., Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010). We, however, are not bound to accept as true legal conclusions phrased as factual allegations, and the plaintiff must present more than mere labels, conclusions, or formulaic recitations of the legal elements.  See, e.g., Twombly, 550 U.S. at 555.  A pro se litigant's pleadings must be read liberally.

suspicion to order a mandatory drug test for Maxwell, "and that, as a result, ordering [Maxwell] to submit to a drug test would be in violation of the law," and "he was terminated for his refusal to order such a test." (Appellants' Brief at 8.)

CEPA provides employees broad protections; for example, it appears that an employee "need not actually make a report to anyone, but can simply refrain from acting and still be protected by CEPA if he is discharged in retaliation for such behavior." Young v. Schering Corp., 645 A.2d 1238, 1245 (N.J. App. Div. 1994), aff'd, 660 A.23d 1153 (N.J. 1995). But CEPA "covers only that behavior which constitutes 'whistle-blowing' as defined by the statute." Id. "'Whistle-blower acts' are defined as '[f]ederal and state statutes designed to protect employees from retaliation for a disclosure of an employer's *misconduct*.'" Id. (quoting Black's Law Dictionary 1596 (6th Ed. 1990)) (emphasis added in Schering).

Here Young simply does not allege that he performed, or was penalized for, whistleblowing in connection with any employer misconduct, and this failure prevents him from making any of the four showings required to state a CEPA claim. It is uncontested that, in order to subject its employee to a mandatory drug test, the government employer must possess "reasonable individualized suspicion" that drug-related activity is taking place and that the employee is involved in that activity. See, e.g., Caldwell v. N.J. Dep't of Corr., 595 A.2d 1118, 1126 (N.J. App. Div. 1991). However, Young did not allege in his complaint that he was ever asked by his superiors to order a

---

See, e.g., Holley v. Dep't of Veterans Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999).

drug test. And unlike the plaintiff in <u>Stapleton v. DSW, Inc.</u>, 931 F. Supp. 2d 635 (D.N.J. 2013), he failed to allege that he was terminated because of the existence of a policy or practice that would have, for example, required him to order a police officer to undergo drug testing even in the absence of reasonable suspicion.[2] <u>See, e.g.</u>, <u>id.</u> at 639 (concluding that plaintiff who allegedly released customer information because she reasonably believed it was necessary to protect safety and welfare of child "sufficiently claims that she was terminated for refusing to participate in DSW's policy" prohibiting release of confidential customer information). While Young contends that, without discovery, "we simply do not know what the Irvington Police Department's practice was with respect to drug testing" (Appellant's Reply Brief at 8), a complaint, in order to survive a motion to dismiss, must set sufficient factual allegations to state a facially plausible claim to relief, <u>see, e.g.</u>, <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677-80 (2009). Young did not meet this basic requirement.

Young contends that he alleged facts supporting a LAD claim because his complaints regarding Chase's prior sexual relationships with subordinates and the impact of these relationships on the workplace constituted protected activity under New Jersey's anti-discrimination statute. It appears that retaliation against a plaintiff who complains about a consensual sexual relationship between a supervisor and another employee would

---

[2] Young also draws comparisons with the New Jersey Appellate Division opinions in <u>Maw v. Advanced Clinical Communications</u>, 820 A.2d 105 (N.J. App. Div. 2003), <u>rev'd</u>, 846 A.2d 604 (N.J. 2004), and <u>Gerard v. Camden County Health Services Center</u>, 792 A.2d 494 (N.J. App. Div. 2002). However, neither decision specifically addressed, for instance, the "can simply refrain from acting" formulation set forth in <u>Young v.</u>

7

support recovery under LAD if the plaintiff believed in good faith that this relationship violated the employer's policy "because it was a form of sex discrimination." Battaglia v. United Parcel Serv., Inc., 70 A.3d 602, 621 (N.J. 2013) (citing Roa v. LAFE, 985 A.2d 1225, 1229 (N.J. 2010)). However, "Appellant's objection was not with regard to the consensual relationship but to the manner in which this relationship impacted the proper functioning of the police department" by causing Chase to excuse Whiting's misconduct. (Appellant's 8/20/15 Letter at 3.) Although it may be inappropriate, this sort of workplace favoritism, even if it negatively affected Young, does not by itself constitute the kind of discrimination prohibited by this statute. Because he did not actually complain about "a form of sex discrimination," Young failed to allege a plausible LAD claim.

In order to establish a retaliation claim under the First Amendment, a public employee must show that, among other things, his or her speech is constitutionally protected. See, e.g., Flora v. Cty. of Luzerne, 776 F.3d 169, 174 (3d Cir. 2015). A statement is protected by the First Amendment if: "'(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have "an adequate justification for treating the employee differently from any other member of the general public" as a result of the statement he made.'" Id. at 175 (quoting Hill v. Borough of Kutztown, 455 F.3d 225, 241-42 (3d Cir. 2006)). Young did not speak as a private citizen. In Flora, we concluded that the plaintiff

Schering.

plausibly established that he spoke as a citizen (and not as the county's chief public defender) by alleging that, among other things, when his speech "'up the chain of command'" failed to produce results, he took drastic measures by filing a funding lawsuit against the county and by reporting that thousands of delinquency adjudications and consent decrees had not been expunged as the state supreme court had ordered. Flora, 776 F.3d at 180. In contrast, it was part of Young's ordinary job duties as a lieutenant in the Irvington Police Department to file an Internal Affairs complaint stating that, inter alia, Chief of Police Chase showed favoritism to another police officer (who evidently had accused Young himself of misconduct and was one of Young's own subordinates) because of a sexual relationship between the Chief of Police and the officer's sister. See, e.g., Hill, 455 F.3d at 242 (concluding that borough manager did not speak as citizen when relaying complaints about mayor's harassment and intimidation to borough council president pursuant to official duties as borough manager). In any event, without more, a complaint about intradepartmental favoritism falls squarely within the realm of personal grievances—as opposed to speech implicating a matter of public concern. In fact, it appears that Young complained about Chase's relationships as part of his own defense to a disciplinary action brought against Young himself.

In the event a complaint fails to state a claim, the plaintiff must be given the opportunity to amend—unless amendment would be futile. Phillips, 515 F.3d at 245-46. While the District Court should have specifically ruled on the issue of futility, we conclude that any error was harmless because amendment would be futile. We have

9

already identified the fatal deficiencies in Young's complaint, and Young does not reference any allegations that could be added to correct such deficiencies (indicating instead that additional information could be uncovered in discovery). After all, Young filed a 300-page pleading, but he was unable to allege sufficient factual matter to state a facially plausible claim.[3]

## III.

For the foregoing reasons, we will affirm the orders of the District Court.

---

[3] Because Young has failed to state a claim, we need not address Appellees' alternative argument that his claims are time-barred.